**Slip Op. 04-30**

# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: GREGORY W. CARMAN, JUDGE

| | | |
|---|---|---|
| HYNIX SEMICONDUCTOR, INC., HYNIX SEMICONDUCTOR AMERICA, INC., | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | **Court No. 01-00988** |
| UNITED STATES, | : : | |
| Defendant, | : : | |
| and | : : | |
| MICRON TECHNOLOGY, INC., | : : | |
| Defendant-Intervenor. | : : | |

[The Department of Commerce's *Final Results of Redetermination Pursuant to Court Remand* is affirmed in its entirety and this case is dismissed.]

Dated: April 1, 2004

*Willkie, Farr & Gallagher LLP* (*James P. Durling, Daniel L. Porter, Carrie L. Owens*), Washington, D.C., for Plaintiffs.

*Peter D. Keisler,* Assistant Attorney General; *David M. Cohen*, Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice; *Jeanne E. Davidson,* Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, *Ada E. Bosque*, Trial Attorney, Commercial Litigations Branch, Civil Division, U.S. Department of Justice; *Patrick V. Gallagher, Jr.*, Senior Attorney, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of Counsel, for Defendant.

*Hale & Dorr LLP* (*Gilbert B. Kaplan*, *Michael D. Esch*, *Cris R. Revaz*), Washington, D.C., for Defendant-Intervenor.

**OPINION**

**CARMAN, JUDGE:** Pursuant to 28 U.S.C. § 1581(c) (2000), this Court has jurisdiction to review the United States Department of Commerce's ("Commerce") Final Results of Redetermination Pursuant to Court Remand (Dec. 17, 2003) ("*Remand Results II*"), filed with the Court in response to its opinion and order in *Hynix Semiconductor, Inc. v. United* States, 295 F. Supp. 2d 1365 (Ct. Int'l Trade 2003) ("*Hynix II*"). This Court will sustain *Remand Results II* unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

**BACKGROUND**

In *Hynix II*, this Court directed Commerce to reconsider and further explain its decisions in *Final Results of Redetermination Pursuant to Court Remand* (June 6, 2003) ("*Remand Results I*"): (1) to reject Hynix's reported and verified amortized research and development ("R&D") costs; (2) to recalculate Hynix's product-specific R&D costs by applying a theory of cross-fertilization; and (3) to reject Hynix's accounting adjustments for the average useful lives ("AULs") of its semiconductor equipment. In particular, this Court ordered Commerce to:

1. [P]rovide a reasoned explanation, supported by substantial evidence, if it is able, [in support of its assertion] that distortions in the cost of production calculations for this period of review necessarily arise, where Plaintiffs' R&D costs[,] which were previously accounted for through expensing, are now accounted for through amortization[; . . .] to consider and explain whether Plaintiffs' R&D costs prior to the Fifth Administrative Review were accounted for through the expensing of these costs, and if this expensing of R&D costs would leave nothing to carry forward to subsequent review periods. *Hynix II*, 295 F. Supp. 2d at 1371.

2. [E]stablish, if it can, through substantial evidence on the record[, not just through the mere recitation of the titles of Plaintiffs' R&D

projects,] that the six non-subject merchandise projects [on a list of projects occurring in Plaintiffs' non-memory lab] or other non-subject merchandise projects provide benefits to the R&D activities of the subject merchandise [or] to recalculate Plaintiffs' R&D costs, excluding R&D costs for no-subject merchandise. *Id.* at 1372.

3.      [P]rovide a reasoned explanation for rejecting Plaintiffs' revised AULs, [which included:] (1) a discussion of why Commerce accepted Plaintiffs' 1996 AUL revision, and whether Commerce characterized the 1996 AUL revision and this period of review's AUL revisions differently; (2) a clarification of what information Commerce evaluated in reaching its determination to reject Plaintiffs' revised AULs; (3) a clarification of whether Commerce did, in fact, consider Plaintiffs' information demonstrating industry-wide AUL ranges, and if not, to do so now; (4) an explanation addressing why Commerce accepted Plaintiffs' appraisers' report for asset revaluation, while rejecting the same report for AUL revision; this explanation should compare the quality of the two sections of the report, including whether all pages of the asset revaluation section were translated and why the qualifications of the appraisers were acceptable for the asset revaluation and not for the AUL section. *Id.* at 1375.

In *Remand Results II*, Commerce "recalculated Hynix's R&D costs and the AULs used for depreciation costs in this review period," although it expressed disagreement with the Court's finding in *Hynix II* that its decisions in *Remand Results I* were unsupported by substantial evidence and otherwise not in accordance with law. *Remand Results II* at 1. Commerce arrived at a dumping margin of 2.07% for Hynix as a result of the recalculations. *Id.*

First, on the issue of amortization of R&D costs, Commerce stated, as it did in *Remand Results I*, that it is of the view that changing accounting methods from expensing to amortization creates distortions in cost of production calculations. *Id.* at 3-4. Commerce noted that Hynix's change in accounting methodologies produces different R&D ratios and "the difference in the R&D amounts that result from these different methodological approaches can never be picked up as a production cost in antidumping

calculations." *Id.* at 4 (citing Mar. 5, 2001, supplemental resp. at Ex. 24). Nevertheless, Commerce noted that in *Hynix II*, this Court found that Commerce's explanation was not supported by substantial evidence on the record, and, as a result, Commerce "recalculated Hynix's R&D costs to allow for amortization." *Id.*

Second, Commerce asserted that its finding of cross-fertilization of R&D in *Remand Results I* was reasonable given "the fact that Hynix has memory projects listed in its non-memory lab, coupled with expert advice [in the form of the memorandum of Dr. Murzy Jhabvala in support of the theory of cross-fertilization]." *Id.* Commerce noted that in *Hynix II*, the Court ordered it "to establish through record evidence that the projects cited in [*Remand Results I*], or other non-subject merchandise projects, provided benefits to [the] subject merchandise" or, if it was unable to do so, Commerce was to recalculate the costs "excluding R&D costs for non-subject merchandise." *Id.* at 4-5. Commerce stated that it was "unable to make the connection the Court requested in *Hynix II* based on existing record evidence [because] R&D, by its nature, does not always produce new knowledge or products and the results of Hynix's ongoing R&D efforts were not known during the review period." *Id.* at 5. As a result, Commerce recalculated Hynix's R&D costs, excluding R&D costs incurred for non-subject merchandise. *Id.*

Third, in addressing the Court's remand of its decision to reject Hynix's revised AULs, Commerce referred to Hynix's "continual change [of] the treatment of its depreciation methodology" as providing reasonable justification for its decision to use Hynix's pre-1998 AULs to calculate the cost of production for this period of review. *Id.* Citing the Court's determination in *Hynix II* that Commerce's explanation was not

supported by substantial evidence on the record, Commerce "recalculated Hynix's AULs to allow for its reported accounting adjustment" in *Remand Results II.  Id.*

Plaintiffs submitted comments to *Remand Results II*, asking that Commerce's redetermination be sustained and reaffirming its position that Commerce's prior determinations on the issues above were not supported by substantial evidence.  (Pls.' Cmts. on the Dep't. of Commerce's Second Re-Determination ("Pls.' Cmts.") at 2, 4.)

Defendant has filed nothing in regard to *Remand Results II.*  Defendant-Intervenor, Micron Technology, Inc. ("Micron") submitted a reply to Plaintiffs' comments, urging the Court to remand *Remand Results II* because Commerce did not follow the Court's instructions and asking the Court to order Commerce "to reinstate its initial redetermination on remand with respect to each of the three issues."  (Reply of Def.-Int. Micron Tech., Inc. to Pls.' Cmts. on the Dep't. of Commerce's Second Redetermination on Remand ("Def.-Int.'s Reply") at 1.)  Micron's Reply repeats the arguments that were offered in support of Commerce's determination in *Remand Results I* for the three issues again before the Court.  *Compare id.* at 4-18, *with Remand Results I* at 3-15, *and Hynix II*, 295 F. Supp. 2d. at 1368-71, 1372-75.  Micron argues that *Remand Results II* should be remanded because it contains a clerical error in the calculation of the importer-specific assessment rate, "which determines the actual amount of antidumping duties assessed and collected by the government on entries subject to the antidumping duty order."  (Def-Int.'s Reply at 18.)  Micron states Commerce corrected this clerical error in the program language used to calculate the margin in *Dynamic Random Access Memory Semiconductors of One Megabit or Above From the Republic of Korea: Final Results of Antidumping Administrative Review*, 66 Fed. Reg. 52,097 (Oct. 12, 2001)

("*Final Results*"), but the correction was not carried forward to the margin calculations in *Remand Results II.* (*Id.* at 19-20 (citing Mem. from Thomas F. Futtner, Program Manager, Office of AD/CVD Enforcement to Holly A. Kuga, Office Director, Group II, Office IV of 11/21/01, Ex. 3).) Micron argues that this error results a significantly understated assessment rate. (*Id.*)

## DISCUSSION

### I.     Commerce's Decision to Recalculate Hynix's R&D Costs is Affirmed.

Upon consideration of *Remand Results II*, the Court holds that *Remand Results II* is supported by substantial evidence on the record and is otherwise in accordance with law. Accordingly, *Remand Results II* is affirmed in its entirety.

The Court holds that Commerce's decision to recalculate Hynix's R&D costs using Hynix's reported amortized R&D costs is supported by substantial evidence and otherwise in accordance with law. Title 19 U.S.C. § 1677b(f)(1)(A) provides that Commerce will calculate cost of production

> based on the records of the exporter or producer of the merchandise, if such records are kept in accordance with the generally accepted accounting principles of the exporting country . . . and reasonably reflect the costs associated with the production and sale of the merchandise, . . . consider[ing] all available evidence on the proper allocation of costs, including that which is made available by the exporter or producer on a timely basis, if such allocations have been historically used by the exporter or producer, in particular for establishing appropriate amortization and depreciation periods, and allowances for capital expenditures and other development costs.

19 U.S.C. § 1677b(f)(1)(A).

The Court has twice remanded this issue to Commerce, asking Commerce to provide a reasoned explanation supported by substantial evidence on the record to support its decision to reject Hynix's reported amortized R&D costs. *See Hynix*

*Semiconductor, Inc. v. United States*, 248 F. Supp.2d 1297, 1312 (Ct. Int'l Trade 2003) ("*Hynix I*"); *Hynix II*, 295 F. Supp. 2d at 1370-71. In *Hynix I*, this Court found that the record demonstrated that Hynix had applied Korean GAAP-consistent accounting practices in reporting its amortized R&D costs and that Hynix's reported costs had been verified by Commerce. *See Hynix I*, 248 F. Supp. 2d at 1311. Commerce, however, rejected Hynix's reported costs in the administrative review, and again on the first remand. *See Hynix I*, 248 F. Supp. 2d at 1310-12; *Hynix II*, 295 F. Supp. 2d at 1369. This Court has observed that "[t]he object of the cost of production exercise is not to capture all past expenses, but rather those expenses that reasonably and accurately reflect a respondent's <u>actual</u> production costs for a period of review." *Micron Tech., Inc. v. United States*, 23 Ct. Int'l Trade 380, 382 (1999) (emphasis added). This Court held that Commerce failed to provide an adequate explanation for its decision to reject Hynix's reported amortized R&D costs that were consistent with Korean GAAP and had been verified by Commerce. *Hynix I*, 248 F. Supp. 2d at 1312-13; *Hynix II*, 295 F. Supp. 2d at 1370-71. This Court noted that, while Hynix changed R&D accounting methods from amortizing to expensing during the First through Fourth Administrative Reviews and back to amortizing during the Fifth Administrative Review of the subject merchandise, Hynix stopped expensing R&D costs in the year incurred in 1997, and since then has utilized amortization as its R&D accounting method. *Hynix I*, 248 F. Supp. 2d at 1312 (citing *Final Decision Memorandum* at 8-11 (Pub. Doc. No. 72); *Hynix Semiconductor, Inc. v. United States*, No. 01-00988 (Ct. Int'l Trade May 21, 2002) (Pls.' Mot. for J. Upon the Agency R. at 21)). Moreover, prior to the initiation of administrative reviews, Plaintiffs, while operating as Hyundai, historically amortized R&D costs. *Hynix II*, 295

F. Supp. 2d at 1369-70 & n.2  (citing *Hynix I,* 248 F. Supp 2d at 1306; *Micron Tech., Inc. v. United States*, 893 F. Supp. 21, 28-29 (Ct. Int'l Trade 1995)).  The Court held that Commerce "failed to establish through evidence on the record that an understatement of R&D costs has occurred in this period of review [based upon] the change of accounting methods, such that Plaintiffs' reported and verified amortized R&D costs do not 'reasonably reflect the costs associated with production and sale of the merchandise.'" *Id.* (quoting 19 U.S.C. § 1677b(f)(1)(A)).

In *Remand Results II*, Commerce appears to be unwilling or unable to articulate a reasoned explanation, supported by substantial evidence on the record, that a change from one permissible accounting method to another necessarily creates a distortion in the cost of production calculation for this period of review.  Based upon the fact that Hynix's reported and verified amortized R&D costs for this period of review are consistent with Korean GAAP and the fact that Commerce has not established through substantial evidence on the record that these reported costs do not reasonably reflect the cost of production, this Court affirms Commerce's decision to recalculate Hynix's cost of production, using Hynix's reported amortized R&D costs in *Remand Results II*.

## II.    Commerce's Decision to Exclude Non-Subject Merchandise R&D Costs is Affirmed.

The Court holds that Commerce's decision to exclude non-subject merchandise R&D costs from calculations of the cost of production for the subject merchandise is supported by substantial evidence on the record and is otherwise in accordance with law. As the Court held in *Hynix I* and *Hynix II*, the memorandum of Dr. Jhabvala, which was prepared for a different administrative review evaluating different products produced by

different parties under conditions that were not established to be similar to those of this case, and the listing of the names of six R&D projects in Hynix's non-memory R&D laboratory, with nothing more, were not substantial evidence to support Commerce's theory of cross-fertilization in this case. *See Hynix I*, 248 F. Supp. 2d at 1316 (noting that Dr. Jhabvala's memorandum was originally prepared for use in *Notice of Final Determination of Sales at Less Than Fair Value: Static Random Access Memory Semiconductors From the Republic of Korea*, 63 Fed. Reg. 8,934, 8,939-40 (Feb. 23, 1998) (citing Mem from Dr. Murzy Jhabvala's to Thomas Futtner of 9/8/97, "Cross Fertilization of Research and Development of Semiconductor Memory Devices")); *Hynix II*, 295 F. Supp. 2d at 1372. Commerce has historically excluded R&D expenses for non-subject merchandise where a respondent maintains product-specific R&D costs and the expenses benefitted non-subject merchandise. *See, e.g.*, *High-Tenacity Rayon Filament Yarn From Germany*, 60 Fed. Reg 15,897, 15,899 (Mar. 28, 1995); *Large Power Transformers from Japan*; *Final Results of Antidumping Duty Review*, 57 Fed. Reg. 45,767, cmt.3 (Oct. 5, 1992). Here, Hynix maintained product-specific R&D costs, and Commerce has not established through substantial evidence on the record that the subject merchandise is benefitted from R&D activities conducted for non-subject merchandise products. Therefore, this Court holds that substantial evidence supports Commerce's decision in *Remand Results II* to recalculate the cost of production for the subject merchandise by excluding non-subject merchandise R&D expenses.

III.   **Commerce's Decision to Accept the Reported Average Useful Lives for Hynix's Fixed Assets is Affirmed.**

Commerce's decision to recalculate depreciation expenses using Hynix's reported AULs, which included an accounting adjustment revising Hynix's AULs, is supported by substantial evidence and otherwise in accordance with law.  In *Hynix II*, the Court concluded that Commerce did not provide a reasoned explanation, supported by substantial evidence on the record, for accepting Plaintiffs' 1996 AUL revision but rejecting Plaintiffs' AUL revision for this period of review.  *Hynix II*, 295 F. Supp. 2d at 1373.  Further, this Court found that Commerce's decision to accept Plaintiffs' appraisers report with respect to revaluation of assets, while challenging the qualifications of the same appraisers and the adequacy of the same report with respect to the revision of Plaintiffs' AULs, was not supported by substantial evidence on the record.  *Id.* at 1374.

Commerce appears to be unwilling or unable to provide an explanation as to why it characterized two AUL revisions differently in *Remand Results II.  See Remand Results II* at 5.  The record established that Commerce accepted the quality of Hynix's appraisers and the adequacy of the appraisers report for the revaluation of Hynix's assets in the *Final Results.  See Hynix II*, 295 F. Supp. 2d  at 1373-74 (citing *Final Results*, 63 Fed. Reg. at 50,871; *Final Decision Memorandum* at 15-18 (Pub. Doc. No. 72)).  Commerce has, however, failed to provide a reasonable explanation for rejecting the same appraisers and the same report addressing Hynix's revised AULs.   The record, nevertheless, demonstrates that Commerce verified the information contained in Hynix's appraisers' report addressing the AUL revision.  *See id.* at 1375 (citing *Final Decision Memorandum* at 17-18 (Pub. Doc. No. 72)).  This Court holds that there is substantial evidence on the

record to support Commerce's decision to recalculate the cost of production using Hynix's revised AULs.

**IV.** **Micron's Request for Remand Based on a Possible Clerical Error is Denied.**

The Court notes that Micron has pointed out a possible clerical error in the calculation of the assessment rate. (Def.-Int.'s Reply at 18-20.) The Court has found no indication that Micron brought this clerical error to Commerce's attention prior to filing its comments to *Remand Results II*, and Commerce made no mention of this error in *Remand Results II. See id.*; *see also*, *Remand Results II.* Additionally, Plaintiffs have not mentioned this clerical error in their comments to *Remand Results II.* (*See* Pls.' Cmts.) Micron did, however, notify Commerce of this same error three days after Commerce issued the *Final Results* in October 2001. (*See* Def.-Int.'s Cmts. Conf. Ex. 3 at 1.) In a memorandum addressing Micron's notification, Commerce identified this error as a ministerial error, "defined under 19 CFR 351.244(f) as 'an error in addition, subtraction, or other arithmetic function, clerical error resulting from inaccurate copying, duplication, or the like, and any other similar type of unintentional error which [Commerce] considers ministerial.'" (*Id.*) Commerce agreed with Micron and corrected the error, noting that correction of the error "would have no impact on the dumping margin [and would not require] publi[cation] [of] amended final results." (*Id.* at 2-3.) The Court declines to address this issue, but leaves it to Commerce to determine whether there is a clerical error, as alleged by Micron, and to correct that error as it deems appropriate.

## CONCLUSION

The Court finds that Commerce's *Remand Results II* is supported by substantial

evidence or otherwise in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i).

Accordingly, *Remand Results II* is affirmed in its entirety and this case is dismissed.


        /s/ Gregory W. Carman
        Gregory W. Carman,
        Judge


Dated: April 1, 2004
       New York, New York