**Slip Op. 05-18**

**United States Court of International Trade**

<table>
<tr><td>

WITEX, U.S.A., INC., ET AL.,

          Plaintiff,

       v.

UNITED STATES,

          Defendant.

</td></tr>
</table>

Before: Pogue, Judge

Consol. Court No. 98-00360

[Defendant's Motion for Reconsideration denied]

Decided: February 7, 2005

Aitken Irvin Berlin & Vrooman, LLP (<u>Bruce Aitken</u>, <u>Bruce de Grazia</u>, and <u>Virginie Lecaillon (consultant)</u>) for the Plaintiff Witex U.S.A., Inc.

Neville Peterson LLP (<u>Maria E. Celis</u> and <u>John M. Peterson</u>) for the <u>Amicus Curiae</u> in support of Witex U.S.A, Inc., et al., Congoleum Corporation.

<u>Peter D. Keisler</u>, Assistant Attorney General, <u>Barbara S. Williams</u>, Attorney in Charge, International Trade Field Office, <u>Amy M. Rubin</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, <u>Yelena Slepak</u>, Attorney, Office of Assistant Chief Counsel, U.S. Customs and Border Protection, for Defendant.

**Pogue Judge:** In this action, on November 15, 2004, the Court entered an opinion and order denying the parties' cross-motions for summary judgment, pursuant to 28 U.S.C. § 2643 (b) (2000) and USCIT

Rule 56(d).  The Court came to the conclusion that additional evidence and testimony was needed to determine the meaning for the term "tileboard," as used by Heading 4411.19.30 of the Harmonized Tariff Schedule of the United States.  See Witex, U.S.A., Inc. v. United States, slip op. 04-144 (CIT Nov. 15, 2004).  As part of that opinion, the Court ordered the parties to prepare an order governing preparation for trial.  Id. at 33.[1]  Four days before the parties were to submit this order, the Defendant filed a motion for reconsideration[2] claiming:  (a)  that  the  Court  erroneously

---

[1]The Court has identified the following issues for trial: 1. What is the commercial meaning of the term "tileboard"?  2. If there is not a definite, uniform and general commercial meaning of the term "tileboard," does the commercial usage in the trade inform the common meaning of the term "tileboard"?  3. What is the common meaning of the term "tileboard"?  4. What does it mean to "simulate tile"? 5. What is the identity of plaintiff's merchandise?

In preparing the order governing preparation for trial, the parties were also directed, to the extent possible, to narrow the scope of the issues for trial.

[2]Defendant designates it's motion as requesting "Rehearing, Modification and/or Reconsideration" pursuant to USCIT Rule 59(a).  That Rule, entitled "New Trials; Rehearings; Amendment of Judgments," provides that "[a] new trial or rehearing may be granted . . . on all or part of the issues . . . (1) in an action in which there has been a trial by jury . . . ; [or] (2) in an action tried without a jury or in an action finally determined . . . ." (Emphasis added).  Courts have liberally construed Rule 59(a) to include any matter which is appealable, Nat'l Corn Growers Ass'n v. Baker, 9 CIT 571, 576, 623 F. Supp. 2d 1262, 1274 (1985) (denial of a preliminary injunction valid grounds for a reconsideration), or for which the court has issued a decision foreclosing further arguments pertaining thereto, Cf. Precision Speciality Metals, Inc. v. United States, 25 CIT 1375, 1381 & n.8, 182 F. Supp. 2d 1314, 1321 & n.8 (2001) (allowing reconsideration of a previously decided issue for which direct attack was barred under the law of the case doctrine).   In

interpreted its argument; (b) that rather than arguing that "tileboard" had a commercial designation, it was arguing that its definition should be defined by "industry standards"; (c) the common and commercial meanings are the same; and (d) therefore, a trial would be unnecessary and futile.   The Court disagrees.

Further investigation will yield one of three results: (1) the Court will find a commercial designation for "tileboard" that conflicts with the common meaning; (2) that there is a commercial meaning and it does not conflict with the common meaning; or (3) no commercial meaning exists.   Regardless of the Court's eventual determination regarding this question, competent testimony will be useful, if not necessary, in all three scenarios.

First, if the Court finds that there is a commercial

---

contrast, in this case, when the Court denied summary judgment on November 15, 2004, it did not issue a "final determination."  In fact, the complete reverse was true.  The Court denied summary judgment precisely for the purpose of collecting additional evidence.  Consequently, no rights of appeal attached, nor were the parties barred from making further argument or producing more evidence on the matter.

   That the court has held that Rule 59(a) should be read broadly in no way allows parties to file motions under Rule 59(a) for reconsideration of interlocutory orders.   As the court noted in Nat'l Corn Growers Ass'n v. Baker, 9 CIT 571, 584, 623 F. Supp. 2d 1262, 1274 (1985), "[o]n its face, Rule 59 provides for rehearings in actions which have been tried and gone to judgment, which is not the case here."  The court then noted that 59(a) has been construed broadly, insofar as "courts 'have experienced no difficulty in concluding that a motion for rehearing or reconsideration [may be] made . . . after the entry of an appealable order is within coverage of Rule 59.'"  Id. (quoting Gainey v. Bhd. of Ry. & S.S. Clerks, 303 F.2d 716, 718 (3rd Cir. 1962)) (emphasis added).

designation, and that this designation conflicts with the common meaning, then the Court has discharged its duty under Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984) and 28 U.S.C. § 2643 (b) (2000) to determine the correct classification of the articles in question. Whether the Defendant is right that the Court has erroneously interpreted its argument to be based on commercial designation rather than "industry standards" is immaterial. The Court has an independent duty to determine the correct meaning of a tariff term regardless of whether the parties have raised the argument, id.

The Defendant's contention that the commercial and dictionary definitions are the same assumes facts not in evidence. The Court could not determine the commercial designation based on the record evidence produced in the parties' cross-motions for summary judgement. Witex, slip-op 04-144 at 31-32. Consequently, any claim regarding the consistency, or inconsistency, of the commercial and common meaning is premature. If it is the Defendant's claim that the common and commercial meanings may be read to be consistent, then the Court should know what the commercial meaning is before pegging the common meaning to it.

The second alternative is that the common and commercial meanings will be the same. However, because (a) there is a slight tension in the dictionary definitions, and (b) an established commercial designation trumps any inconsistent common meaning, the

established commercial designation will arrest all doubts as to the term's meaning.   Not only will that foreclose arguments as to alternative readings of the dictionary definitions, it will also preclude having to change the common meaning with evolving processes for manufacturing "tileboard" as the Defendant's proposed theory of construction appears to require.   Accordingly, there is sufficient justification to investigate the possibility of a commercial designation even under this scenario.[3]

_____

[3]The reason the Court has demanded testimony is well demonstrated by the Defendant's own representations to the Court. In its Motion for Summary Judgment, the Defendant argued that "tileboard": "(i) is not laminated, (ii) is usually embossed with a pattern, (iii) is coated with an epoxy or other [liquid] finish to resemble ceramic tile, (iv) is water-resistant and (v) is only used on walls."  Witex, slip-op 04-144 at 7 (citations omitted). In its Motion for Reconsideration, the Defendant claimed that the Court missed the point that "tileboard" is "a large (often, 4x8 feet), thin board that is continuously worked along any of its edges (e.g., bullnosed, beveled), possesses a hard, moisture-resistant, glossy, decorative coating that simulates tiles and is used for interior finishing.  In addition, tileboard is primarily used on walls and ceilings, frequently in bathrooms and laundry rooms."  Def.'s Mot Reh'g, Modification, and/or Recons. at 11. The Defendant does not offer any explanation as to why it arrives at two different definitions, in its two motions.

Moreover, Defendant's failure to offer any kind of precise definition makes the Court's deliberations difficult.  Rather, all the Defendant offers is a "description."  The Court has no idea what the required elements of "tileboard" are under the Defendant's proposed "description."  This failure is even more troubling because, in its Motion for Summary Judgment, the Court drew the Defendant's attention to the need to offer a judicially manageable standard for "moisture resistance".  Witex, slip op. 14-144 at 30 n.26.  The Defendant has utterly failed to correct that error here.  Likewise, the Defendant proposes that tileboard must "simulate tile." Reply to Pl.'s Opp'n Def.'s Mot Reh'g, Modification, and/or Recons. at 5-6.  There are many ways a product may simulate tile.  Without offering so much as a possible meaning, the Defendant has in essence delegated to the Court the function of determining the definition of "simulat[ing]

    Third, the Court may conclude that there is no commercial designation. Nevertheless, a trial would still be required for the Defendant to prove its theory of an "industry standard." Although courts on rare occasion have taken judicial notice of authoritative sources defining an industry standard, N. Am. Processing Co. v. United States, 236 F.3d 695, 698-99 (finding the Explanatory Notes were bolstered by the USDA regulation's definition of a term because the definition constituted "reliable information"); Rocknel Fastners, Inc. v. United States, 267 F.3d 1354, 1357-1361 (Fed. Cir. 2001) (relying on ANSI Standards' definition of the term), accord Boen Hardwood Flooring, Inc. v. United States, 357 F.3d 1262, 1265 (Fed. Cir. 2004) (implicating that Voluntary Product Standards are considered within the commercial designation framework), the Defendant's evidence is a far cry from these sources. Accordingly, as the cases cited by the Defendant admit, competent testimony is still required if the Defendant wishes to inform the dictionaries with "industry standards." See S.I. Stud, Inc. v. United States, 17 CIT 661, 662-666 (1993) (relying on dictionaries, expert testimony and product brochures) aff'd, S.I. Stud, Inc. v. United States, 24 F.3d 1394, 1395 (Fed. Cir. 1994) (affirming district court's result because its definition was supported by "mechanical and dictionary definitions . . . and the

---

tile." If the Defendant insists on leaving the analysis of this crucial issue to the Court's discretion, it cannot object as to the means the Court will use in resolving this question.

testimony of experts before the Court."); <u>Texas Instruments Inc. v. United States</u>, 475 F. Supp. 1183, 1186 (1979) (relying on common dictionaries and expert testimony).

Accordingly, the Court concludes that trial testimony is required; the Defendant's motion is therefore DENIED. The parties shall jointly prepare an order governing preparation for trial and submit it to the Court by March 7, 2005.

It is so ORDERED.

_____
Donald C. Pogue
Judge

February 7, 2005
New York, New York