**Slip Op. 06-9**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

|  |  |
|---|---|
| HYUNDAI ELECTRONICS INDUSTRIES CO., LTD. and HYUNDAI ELECTRONICS AMERICA, INC., |  |
| Plaintiffs, | Before: Richard W. Goldberg, Senior Judge |
| v. | |
| UNITED STATES, | Cons. Court No. 00-01-00027 |
| Defendant, | |
| and | |
| MICRON TECHNOLOGY, INC., | |
| Defendant-Intervenor. | |

## OPINION

[Motion for reconsideration and partial modification granted in part. Previous remands of Commerce antidumping duty determination modified and case remanded with instructions.]

Dated: January 18, 2006

Willkie, Farr & Gallagher LLP (Daniel L. Porter and James P. Durling) for Plaintiffs Hyundai Electronics Industries Co., Ltd. and Hyundai Electronics America, Inc.

Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Jeanne E. Davidson, Deputy Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Kenneth S. Kessler); Patrick V. Gallagher, Jr., Of Counsel, Office of the Chief Counsel for Import Administration, United States Department of Commerce, for Defendant United States.

King & Spalding LLP (Gilbert B. Kaplan, Cris R. Revaz, and Daniel L. Schneiderman) for Defendant-Intervenor Micron Technology, Inc.

GOLDBERG, Senior Judge: This case is before the Court following second remand to the United States Department of Commerce (**"Commerce"**) of the results of a fifth administrative review of an antidumping duty order and upon motion for reconsideration of the Court's previous remand decisions. The Court has jurisdiction pursuant to 28 U.S.C. § 1581(c).

## I. BACKGROUND

In <u>Hyundai Electronics Industries Co. v. United States</u>, 29 CIT __, Slip Op. 05-105 (Aug. 25, 2005) (**"Hyundai II"**), familiarity with which is presumed, the Court sustained in part and remanded in part Commerce's first redetermination in the fifth administrative review regarding Dynamic Random Access Memory Semiconductors of one megabit or above from the Republic of Korea (**"Korea"**) produced by Hyundai Electronics Industries Co., Ltd. and Hyundai Electronics America, Inc. (collectively **"Hyundai"**) and LG Semicon Co., Ltd. (**"LG Semicon"**).[1] <u>See</u> <u>Final Results of Redetermination Pursuant to Court Remand</u> (Aug. 31, 2004), <u>available at</u> http://ia.ita.doc.gov/remands/04-37.pdf (the **"First Remand Results"**); <u>Dynamic Random Access Memory Semiconductors of One Megabit or Above From the Republic of Korea</u>, 64 Fed. Reg. 69694 (Dec. 14, 1999) (final results of

---

[1] After the fifth administrative review was completed, respondent Hyundai acquired LG Semicon. In this opinion, Hyundai-as-successor-in-interest-to-LG Semicon is referred to as LG Semicon.

administrative review) (the **"Final Results"**).

In Hyundai II, the Court reviewed several aspects of the First Remand Results, including, in relevant part[2]: (1) Commerce's decision to use Plaintiffs' amortized research and development (**"R&D"**) expenses in the calculation of the cost of producing the subject merchandise; and (2) Commerce's provision of additional evidence to support its rejection of Plaintiffs' deferral of R&D costs related to long-term projects. See Hyundai II, 29 CIT at ___, Slip Op. at 17-23. The Court sustained Commerce's redetermination with respect to issue (1), id. at ___, Slip Op. at 20; but, citing evidentiary deficiencies, rejected Commerce's position as to issue (2). Id. at ___, Slip Op. at 23. The Court remanded this issue to Commerce with instructions to accept Plaintiffs' deferral methodology in calculating R&D expenses for long-term projects. Id. Commerce duly complied with the Court's order. After receiving no comments from Plaintiffs or Defendant-Intervenor Micron Technology, Inc.

_____

[2] These are two of the aspects of the Final Results which were first remanded to Commerce in Hyundai Electronics Industries Co. v. United States, 28 CIT ___, 342 F. Supp. 2d 1141 (2004) (**"Hyundai I"**), familiarity with which is presumed. In addition, the Court in Hyundai II also reviewed two other previously-remanded aspects of the Final Results: Commerce's recalculation of LG Semicon's dumping margin using only partial adverse facts available and Commerce's provision of additional evidence to support its R&D cost cross-fertilization theory. Hyundai II, 29 CIT at ___, Slip Op. at 6-17. Hyundai II also addressed certain newly raised challenges to Commerce's calculation of Hyundai's entered value. Id. at ___, Slip Op. at 23-28.

("**Micron**") on its draft calculations, Commerce released the Final Results of Redetermination Pursuant to Court Remand (Sept. 23, 2005) (the "**Second Remand Results**").  Although expressing disagreement with the findings in Hyundai II, Commerce recalculated Plaintiffs' R&D expenses pursuant to the Court's instructions.  Second Remand Results at 1.

Eighteen days later, Micron submitted a Memorandum Addressing the Final Results of Redetermination Pursuant to Court Remand ("**Def.-Intvr.'s Br.**").  While acknowledging the Second Remand Results' conformity with Hyundai II, Micron argued that an intervening opinion by the United States Court of Appeals for the Federal Circuit (the "**Federal Circuit**") had indirectly overruled the conclusions of law underpinning Hyundai II.  Def.-Intvr.'s Br. at 1 (citing Hynix Semiconductor Inc. v. United States, 424 F.3d 1363 (Fed. Cir. 2005) ("**Hynix IV**")[3]).  Plaintiffs submitted Rebuttal Comments in Response to Defendant-Intervenor's Memorandum ("**Pls.' Br.**"), arguing that the Federal Circuit's decision in Hynix IV was based on conclusions of fact particular to the investigation at issue in that case rather than general conclusions of law.  Pls.' Br. at 2.  Commerce filed a response brief ("**Commerce's Br.**") agreeing with Micron's arguments.  Commerce's Br. at 2.  Commerce additionally filed a motion for

_____

[3] The Federal Circuit issued its mandate in Hynix IV on November 28, 2005.

reconsideration and partial modification of the Court's previous remand decisions ("**Commerce's Motion**"), requesting that the Court direct Commerce to reinstate certain of its original findings and recalculate the antidumping duty margins accordingly. Commerce's Motion at 2.

This case is now properly before the Court following second remand and upon Commerce's Motion, consolidated for purposes of this opinion. The Court must uphold Commerce's determination if it is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i) (2000). The Court may exercise its discretion to revise its previous remand decisions, see USCIT R. 59(a),[4] although the Court will generally only do so on motion for reconsideration where the Court's previous decisions are "manifestly erroneous." Former Employees of Quality Fabricating, Inc. v. United States, 28 CIT ___, ___, 353 F. Supp. 2d 1284, 1288 (2004) (quotation marks omitted); cf. Doe v. New York City Dep't of Social Services, 709 F.2d 782, 789 (2d Cir. 1983) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.") (quotation marks omitted). After due

---

[4] "Courts have liberally construed Rule 59(a) to include any matter which is appealable, or for which the court has issued a decision foreclosing further arguments pertaining thereto." Witex, U.S.A., Inc. v. United States, 29 CIT ___, ___ n.2, 360 F. Supp. 2d 1327, 1328 n.2 (2005) (citations omitted).

consideration of the parties' submissions, the Federal Circuit's decision in <u>Hynix IV</u>, the administrative record, and all other papers had herein, and for the reasons that follow, the Court grants in part Commerce's Motion, modifies its previous decisions, and remands this case with instructions.

## II. <u>DISCUSSION</u>

**A.    The Court Must Apply Relevant Federal Circuit Decisions Issued During the Course of Remand Proceedings**

At the outset, it is necessary to recite that this Court is bound by the decisions of its appellate courts.  Before entering final judgment, the U.S. Court of International Trade must consider the legal effect of Federal Circuit or U.S. Supreme Court decisions issued during the course of the often lengthy remand proceedings which characterize this Court's antidumping and countervailing duty cases.  When, for example, an intervening decision by the Federal Circuit clarifies a legal principle of relevance to a case at bar, the Court must apply it.  <u>See, e.g.</u>, <u>E.I. DuPont de Nemours & Co. v. United States</u>, 17 CIT 1266, 1288, 841 F. Supp. 1237, 1254 (1993) (remanding case to allow Commerce to reexamine its methodology in light of intervening Federal Circuit decision); <u>Fed.-Mogul Corp. v. United States</u>, 18 CIT 160, 163 (1994) (remanding case to allow Commerce to consider issues raised by intervening Federal Circuit decision).  A regrettable byproduct of this due deference may be to prolong already lengthy litigation with another agency remand; nonetheless, the Court may

not shirk its ongoing responsibility to review the legality of
agency determinations.

It is, however, equally true that there are certain natural
limits to the reach of Federal Circuit decisions.  As with any
judicial precedent, they are only as relevant to subsequent cases
as their unique fact patterns will allow.  A Federal Circuit
decision which turns on case-specific findings of fact may be of
less precedential importance to a case at bar than a decision
based on generally applicable conclusions of law.  The Court is
charged with discerning the controlling legal principles from
Federal Circuit decisions.  See Aves. in Leather, Inc. v. United
States, 423 F.3d 1326, 1331 (Fed. Cir. 2005) (noting "doctrine of
stare decisis applies to only legal issues and not issues of
fact").

In this light, it is clear that Micron has rightly drawn the
Court's attention to Hynix IV, a recent Federal Circuit decision
potentially relevant to the disposition of certain issues in this
case.  By the same measure, Plaintiffs have appropriately
cautioned the Court to consider the possibly limited application
of a case involving a different factual record.  With the inquiry
so framed, the Court turns to its analysis of Hynix IV.

**B.   Hynix IV Clarified Legal Principles at Issue in this Case**

*1.   Overview of Hynix IV*

The factual and procedural background of Hynix IV is
familiar to the parties and the Court.  Hynix IV involved an

appeal of judgments by the U.S. Court of International Trade (Carman, J.)[5] which reviewed several aspects of the seventh administrative review of the same antidumping duty order at issue in the case at bar. Although the cases cover two different periods of review and two different administrative records, the parties in these two cases are identical[6] and they raised many of the same issues in both proceedings.

Of particular relevance is the issue of the appropriate treatment by Commerce of certain R&D cost accounting practices used by Hynix during the period of review covered by Hynix IV. During the seventh administrative review, Hynix accounted for R&D costs by amortizing them, which represented a change from the cost accounting practice of expensing used in previous periods of review. Hynix I, 27 CIT at ___, 248 F. Supp. 2d at 1305. At the same time, Hynix also chose to defer recognition of the R&D costs associated with certain long-term projects until these projects were commercialized (i.e., revenue-producing). Id. Although acknowledging that these two cost accounting practices were

---

[5] See Hynix Semiconductor, Inc. v. United States, 27 CIT ___, 248 F. Supp. 2d 1297 (2003) (**"Hynix I"**); Hynix Semiconductor, Inc. v. United States, 27 CIT ___, 295 F. Supp. 2d 1365 (2003) (**"Hynix II"**); Hynix Semiconductor, Inc. v. United States, 28 CIT ___, 318 F. Supp. 2d 1314 (2004) (**"Hynix III"**). The Hynix case history also includes two opinions concerning evidentiary issues which were not reviewed in Hynix IV.

[6] The difference in the named plaintiffs in these two cases is attributable to Hyundai's corporate name change, which took place subsequent to the fifth administrative review at issue here.

recognized under Korea's generally accepted accounting principles ("**GAAP**"), Commerce rejected the amortization and deferral of Hynix's R&D expenses as distortive of the antidumping calculations required for its final determination. Id. at ___, 248 F. Supp. 2d at 1307-09. Concerning amortization, Commerce found that the switch in accounting methods resulted in an undercounting of production costs in the current period of review, because Hynix's recent adoption of amortization necessarily resulted in recognition of only a fraction of Hynix's costs. Id. at ___, 248 F. Supp. 2d at 1308. Likewise, Commerce found that deferral also resulted in an undercounting of production costs, because the future commercialization dates of Hynix's long-term projects were too speculative and could result in indefinite deferral of certain R&D costs. Id. at ___, 248 F. Supp. 2d at 1309.

After two remands, the court required Commerce to accept the amortization of R&D costs as an acceptable accounting method, but upheld Commerce's rejection of deferred R&D costs related to long-term projects. With regard to the amortization issue, the court concluded that Commerce had failed to establish "that a change from one permissible accounting method to another necessarily creates a distortion in the cost of production calculation[.]" Hynix II, 27 CIT at ___, 295 F. Supp. 2d at 1369. In so concluding, the court rejected Commerce's use of hypothetical factual scenarios to demonstrate the per se

distortive effect of switching cost accounting practices from expensing to amortization. Id. Instead, the court viewed the relevant section of the antidumping statute, 19 U.S.C. § 1677b(f)(1)(A),[7] as requiring Commerce to produce substantial evidence that the change in cost accounting methods actually resulted in a distortion of antidumping calculations "in this period of review for these Plaintiffs under these facts." Id. Unable to produce such specific evidence, Commerce revised its calculations using amortized R&D costs, which the court affirmed. Hynix III, 28 CIT at ___, 318 F. Supp. 2d at 1319.

With regard to the deferral issue, the court concluded that Commerce was ultimately able to satisfy 19 U.S.C. § 1677b(f)(1)(A) by providing "a reasoned explanation for rejecting Plaintiffs' indefinite deferral of certain R&D expenses." Hynix II, 27 CIT at ___, 295 F. Supp. 2d at 1371. The court concurred with Commerce that Hynix had failed to provide evidence on the administrative record of the expected timing of revenues from the deferred R&D costs, making likely the prospect of indefinite

---

[7] This section provides, in pertinent part, that:
Costs shall normally be calculated based on the records of the exporter or producer of the merchandise, if such records are kept in accordance with the generally accepted accounting principles of the exporting country (or the producing country, where appropriate) and reasonably reflect the costs associated with the production and sale of the merchandise.
19 U.S.C. § 1677b(f)(1)(A) (2000).

deferral and thus cost undercounting during the period of review.
Id. at ___, 295 F. Supp. 2d at 1371.

On appeal, the Federal Circuit reversed the court on the
issue of amortization but affirmed as to the issue of deferral.
Hynix IV, 424 F.3d at 1370, 1372.  First speaking generally of
the appropriate application of 19 U.S.C. § 1677b(f)(1)(A), the
Hynix IV court stated:

> The statute and our prior pronouncements are clear.
> The company has the responsibility of showing that its
> records are kept in accordance with its home country's
> GAAP.  If the company meets this burden, Commerce may
> counter with substantial evidence that the records do
> not comply with the home country's GAAP.  If the
> records withstand this scrutiny, Commerce may show, by
> substantial evidence, that the costs do not reasonably
> reflect the costs of production and should not,
> therefore, be used.

Id. at 1369.

Turning specifically to the issue of amortization, the
Federal Circuit concluded that, "[w]hile Hynix was able to show
that its records compl[ied] with Korean GAAP, Commerce showed by
substantial evidence that Hynix's reported R&D expenses fail[ed]
to reflect the costs of production."  Id. at 1370.  The Hynix IV
court found that, during the period immediately following a
company's switch in cost accounting methods from expensing to
amortizing, an amount representing only a fraction of the
company's current costs is necessarily recognized by the

company.[8]  Id.  The Federal Circuit concluded that "[i]t is

facially apparent that a fraction of costs does not accurately

capture full costs[,]" thereby justifying a judgment by Commerce

that a company's reported costs do not reasonably reflect the

costs of production under 19 U.S.C. § 1677b(f)(1)(A).  Id.  The

Hynix IV court further indicated that, even in situations where

the "inadequacy of [the cost accounting] method [is] not

transparent," it would be appropriate to defer to Commerce's

expert judgment in this area.  Id.  The Hynix IV court therefore

remanded this issue with instructions for Commerce to revise its

calculations by expensing R&D costs as in Commerce's original

determination.  Id.

Next considering the issue of deferral, the Federal Circuit

found that Commerce produced substantial evidence that Hynix's

---

[8] For example, in the first year following a switch to a
five-year cost amortization schedule, a company would recognize
only one-fifth of its current expenses, instead of recognizing
one-fifth of its current expenses plus one-fifth of the previous
four years' expenses as would occur under an established
amortization schedule.  In this example, undercounting of current
costs would continue until the fifth year following the switch in
cost accounting methods.  See Hynix IV, 424 F.3d 1370.  Of
course, this analysis assumes that no radical decreases in the
company's year-over-year costs occur during the period
immediately following the switch in cost accounting methods - a
factor which Commerce is apparently not required to consider
under Hynix IV's per se rule that a switch in this cost
accounting practice is necessarily distortive of antidumping
calculations in subsequent periods of review.  But see Hynix IV,
424 F.3d at 1374 (Dyk, J., dissenting) (rejecting per se rule and
noting that "Commerce is obligated to base its decision on actual
data establishing distortion, not on hypothetical numbers picked
from thin air").

cost accounting records did "not comport with the requirements of its home country's GAAP[.]"  Id. at 1372.  The Hynix IV court accepted Commerce's conclusion that an investigated company has the burden of providing sufficient evidence that "its R&D costs [would] result in future revenues" in order to establish compliance with home country GAAP and that Hynix failed to do so on the record of the seventh administrative review.  Id.  The Federal Circuit therefore affirmed Commerce's disallowance of indefinite deferral of certain R&D costs.  Id.

*2.    Applicability of Hynix IV to this Case*

The applicability of Hynix IV to the case at bar is manifest.  Hynix IV plainly clarifies legal principles of direct relevance to this case - i.e., Commerce's permissible treatment of certain cost accounting practices in antidumping proceedings.  These are the very same cost accounting practices at issue in this case.  Indeed, the Federal Circuit expressly stated that its analysis of the factual scenarios presented in Hynix IV was intended to "help to clarify the application of [19 U.S.C. § 1677b(f)] further."  Hynix IV, 424 F.3d at 1369.  It cannot be seriously argued that the Federal Circuit did not mean for this clarification of the law to be applied on a prospective basis by courts facing similar (much less the same) interpretative issues under the same section of the antidumping statute.  Plaintiffs' arguments to this effect are therefore without merit.

Moreover, the factual parallels between Hynix IV and this case cannot be ignored.  The cases involve the same cost accounting practices followed by the same company and subject to the same treatment by Commerce during the course of antidumping review.  The only difference between the two cases is the timing of Commerce's review of the underlying antidumping duty order.  To be sure, this difference is an important one, as material variations in the records for each administrative review (and arguments related thereto) could lead to divergent dispositions.  Absent such variations, however, the Court cannot reach an outcome other than that legally compelled by Hynix IV.  See Elkem Metals Co. v. United States, 28 CIT ___, ___, Slip Op. 04-36 at 6 (2004) (finding an issue resolved as a matter of law by Federal Circuit in earlier review).

**C.     The Court Must Revise Its Previous Decisions and Remand to Bring the Instant Case into Conformity with Hynix IV on the Issue of R&D Cost Amortization Only**

The sole remaining question before the Court is therefore the appropriate next step in this long-litigated case in light of Hynix IV.  In Commerce and Micron's view, Hynix IV is virtually identical to this case and thus requires the Court to revise its prior decisions and reinstate Commerce's original findings with respect to both amortization and deferral of Plaintiffs' R&D costs.  Plaintiffs maintain that Hynix IV did not announce

conclusions of law which require a change in the Court's prior fact-based holdings with regard to either issue.

The Court finds that Hynix IV announced legal conclusions which require modification of the Court's prior decisions only with respect to the first issue - the amortization of R&D costs. Because the Court discerns an important factual difference between this case and Hynix IV on the issue of R&D cost deferral, the Court finds that application of the legal conclusions of Hynix IV does not upset (and in fact reinforces) the Court's prior decisions with regard to this second issue.

### 1.    *Amortization of Plaintiffs' R&D Costs*

With regard to the amortization issue, it is uncontroverted that Plaintiffs switched their cost accounting method from expensing to amortization during the fifth administrative review. Because Hynix IV concluded that such a recent switch in these cost accounting practices is facially distortive of antidumping calculations, Commerce was entitled to reject Plaintiffs' amortized R&D costs without any additional factual substantiation.  Commerce's original findings to this effect therefore must be reinstated; the Court's previous decisions to the contrary must be, and accordingly are, modified.

### 2.    *Deferral of R&D Costs*

With regard to the deferral issue, a similarly straightforward application of Hynix IV is foreclosed by certain

factual findings expressly made by Commerce in this case.  In

Hyundai I, the Court noted that "Commerce does not disagree that

the [deferral] accounting methodology is in accordance with

Korean GAAP[.]"  Hyundai I, 28 CIT at ___, 342 F. Supp. 2d at

1158.  In other words, the Court found that Commerce had conceded

that Plaintiffs' R&D cost deferral was in accordance with Korean

GAAP.[9]  This is a critical factual distinction between this case

and Hynix IV overlooked by Commerce and Micron.  In Hynix IV,

Commerce was able to demonstrate by substantial evidence to the

Federal Circuit that "Hynix's records do not comport with the

requirements of its home country's GAAP[.]"  Hynix IV, 424 F.3d

at 1372.[10]  Unlike Hynix IV, Commerce did not attempt to prove

here that Plaintiffs had failed to meet the requirements of their

home country GAAP; rather, Commerce expressly found the opposite

to be true.  As such, the Federal Circuit's specific disposition

of the R&D cost deferral issue in Hynix IV on the basis of

noncompliance with home country GAAP - an argument neither raised

---

[9] See also Final Results, 64 Fed. Reg. at 69699 ("We agree
with Hyundai and LG [Semicon] that their method of amortizing and
deferring R&D costs is permissible with Korean GAAP . . . .").
The Court has carefully reviewed the First Remand Results and the
Second Remand Results and has found no indication of Commerce's
intention to eschew its original factual finding on this issue.

[10] Commerce was entitled and, according to the Federal
Circuit, chose to make different arguments and factual
concessions in this case than in Hynix IV.  But see Hynix I, 27
CIT at ___, 248 F. Supp. 2d at 1308 (noting that Commerce
"concedes that Plaintiffs' method of amortizing and deferring R&D
costs is permissible under Korean GAAP").

nor proven here by Commerce - is not applicable to this case under well established principles of administrative law.  It is axiomatic that the Court's review is defined by Commerce's determination below.  See SEC v. Chenery Corp., 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.").  "Chenery stands for the proposition that a court may not make its own factual findings to support an agency's determination." Defenders of Wildlife v. Hogarth, 330 F.3d 1358, 1368 (Fed. Cir. 2003).  Because the Court would essentially have to rewrite Commerce's factual findings in order to apply the same legal principles used by the Federal Circuit to resolve the R&D cost deferral issue in Hynix IV, the Court cannot agree that Hynix IV controls this case in the way Commerce and Micron contend.  For this reason, the Court declines to modify its previous decisions on this issue.

Moreover, in the Court's view, Hynix IV's general guidance on the application of 19 U.S.C. § 1677b(f) actually supports the analytical framework employed in the Court's previous decisions concerning this issue.  Commerce's arguments in Hyundai I and Hyundai II focused on the agency's contention that Plaintiffs had failed to offer "reasonable evidence" that the deferred R&D costs were more appropriately recognized in future periods rather than

the current period of review.  First Remand Results at 6.[11]  The

Court rejected Commerce's arguments on the basis of its holding

that Commerce, not Plaintiffs, bore the burden of proof on this

issue - i.e., the burden of providing substantial evidence that

R&D costs deferred in accordance with home country GAAP in fact

benefitted (and thus should be reflected in the cost accounting

for) the current period of review.  Hyundai II, 29 CIT at ___,

Slip Op. at 22-23.  Hynix IV confirms this holding.  In Hynix IV,

the Federal Circuit made clear that, where an investigated

company's cost accounting records withstand scrutiny of their

compliance with home country GAAP, it is the obligation of

Commerce to "show, by substantial evidence, that the costs do not

reasonably reflect the costs of production and should not,

therefore, be used."  Hynix IV, 424 F.3d at 1369.  This case

presents exactly that scenario.  Because the Court employed the

burden of proof dictated by Hynix IV, the Court finds no legal

error in its analytical approach to this issue.

Nevertheless, the Court acknowledges that Commerce's

argument on the issue of R&D cost deferral is identical in form

to Commerce's argument, accepted by the Federal Circuit in Hynix

---

[11] This argument is based on the second half of the two-part statutory requirement for use of exporter/producer cost accounting records in antidumping calculations.  See 19 U.S.C. § 1677b(f)(1)(A) (2000) (for use in antidumping calculations, requiring investigated company's cost records to (1) be kept in accordance with home country GAAP and (2) "reasonably reflect the costs associated with the production and sale of the merchandise").

IV, concerning the distortive effect of switching cost accounting methods from expensing to amortizing.  The Hynix IV court allowed Commerce to satisfy its evidentiary burden by employing a per se rule concerning the distortive effect of such a switch.  In this case, Commerce seeks a similar rule for situations involving switches from expensing to deferral.  However, the Court does not understand Hynix IV to have created the broad rule that all switches in cost accounting methods are per se distortive of antidumping calculations.  Such a rule seems particularly inapt here: it is not "facially apparent" that a switch to deferral necessarily results in cost undercounting in the current period of review, Hynix IV, 424 F.3d at 1370, because Plaintiffs' home country GAAP allows deferral only if "certain conditions are satisfied, namely that there be a reasonable expectation of future benefit."  Id. at 1372.

Finally, while the Court is mindful that "Commerce's determinations are entitled to deference" in the complex area of antidumping calculations, id. at 1370, such deference is appropriate only "so long as there is substantial evidence to be found in the record as a whole."  NLRB v. Brown, 380 U.S. 278, 292 (1965); see also Anderson v. Dep't of Transp., FAA, 827 F.2d 1564, 1577 (Fed. Cir. 1987) (Baldwin, J., dissenting) ("Although deference is to be accorded to an administrative determination, we, the reviewing court, retain a responsibility to scrutinize the entire record and to reverse or remand a decision which is

not supported by substantial evidence."). Here, the Court has concluded that Commerce did not meet its evidentiary burden; therefore, deference to Commerce's determination on the issue of R&D cost deferral is not warranted.

Accordingly, absent a showing of previous manifest error, see Former Employees of Quality Fabricating, 28 CIT at ___, 353 F. Supp. 2d at 1288, the Court declines to revisit its conclusions on the issue of R&D cost deferral.

### III. <u>CONCLUSION</u>

The Court concludes that it is a sound use of its discretion under USCIT Rule 59(a) to revise its previous decisions in order to bring this case into conformity with <u>Hynix IV</u>. This case is therefore remanded for Commerce to reinstate its original findings regarding R&D cost amortization and recalculate the antidumping duty margins. A separate order will be issued accordingly.

<u>/s/ Richard W. Goldberg</u>
**Richard W. Goldberg**
**Senior Judge**

**Dated:** **January 18, 2006**
**New York, New York**