**Slip Op. 08-94**

## UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr>
<td>

PAM, S.P.A and JCM, LTD.,

              Plaintiffs,

     v.

UNITED STATES,

              Defendant,

     and

A. ZAREGA'S AND SONS, AMERICAN
ITALIAN PASTA COMPANY, NEW WORLD
PASTA COMPANY, and DAKOTA
GROWERS PASTA COMPANY,

              Defendant-Intervenors.

</td>
<td>

**Before: Gregory W. Carman, Judge**

Court No. 04-00082

</td>
</tr>
</table>

[*Plaintiffs' motion for reconsideration is denied.*]


Law Offices of David L. Simon (David L. Simon) for Plaintiff PAM, S.p.A.

Rodriguez O'Donnell Ross Fuerst Gonzalez & Williams, PC (Thomas J. O'Donnell, Michael A. Johnson, and Lara A. Austrins) for Plaintiff JCM, Ltd.

Gregory G. Katsas, Acting Assistant Attorney General; Jeanne E. Davidson, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Jane C. Dempsey); of counsel, Mykhaylo A. Gryzlov, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for Defendant.

Kelley, Drye & Warren, LLP (David C. Smith, Jr., and Paul C. Rosenthal) for Defendant-Intervenors.

September 9, 2008

**OPINION & ORDER**

**CARMAN, JUDGE:** Before the Court is the motion by Plaintiff PAM, S.p.A. ("PAM") for

reconsideration of the Court's opinion in PAM, S.p.A. v. United States, Slip Op. 08-75

(July 9, 2008) and accompanying judgment, which sustained the remand results of the

sixth administrative review of the antidumping duty order on certain pasta from Italy.

In the remand results, Commerce applied a 45.49% dumping margin to Plaintiffs, PAM

and JCM, Ltd., based on adverse facts available.  When Commerce applies adverse facts

available, it must corroborate the dumping margin to ensure that the margin is "a

reasonably accurate estimate of the respondent's actual rate, albeit with some built-in

increase intended as a deterrent to non-compliance."  F.LLI De Cecco Di Filippo Fara S.

Martino S.p.A. v. United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000).

The Court held that Commerce's method of corroboration in this case—which

was to look at PAM's transaction-specific dumping margins from a prior administrative

review, and satisfy itself that a small number of those transaction-specific margins (less

than 1% of the total number of PAM's transactions from that period of review) were

higher than the adverse facts available dumping margin selected—was sufficient.[1]  The

_____

[1]The Court mis-described a transaction-specific margin as a comparison of "a
single U.S. sale to a single home-market sale."  See PAM, Slip Op. 08-75 at 3 n.2.  PAM
explained that a transaction-specific margin actually compares a single U.S. sale to

Court's opinion explicitly relied on a single case from the Court of Appeals for the Federal Circuit, <u>Ta Chen Stainless Steel Pipe, Inc. v. United States</u>, 298 F.3d 1330 (Fed. Cir. 2002), and suggested that the Court might reach an alternate conclusion about the rate selected by Commerce if <u>Ta Chen</u> was not binding precedent. <u>PAM</u>, Slip Op. 08-75 at 11-12.

PAM now files a motion for reconsideration of the Court's opinion and related judgment, arguing that an intervening decision of the Supreme Court undermines the validity of <u>Ta Chen</u>. (See Motion of Pl. PAM S.p.A. for Reconsideration of Slip Op. 08-75 ("Recons. Mot.").) PAM contends that <u>Exxon Shipping Co. v. Baker</u>, __ U.S. __, 128 S. Ct. 2605 (2008), "vitiates the authority of <u>Ta Chen</u>," and, that, in relying on that case, the Court's prior opinion "contains a manifest error of law." (<u>Id.</u> at 4.) Because <u>Exxon Shipping</u> does not overrule <u>Ta Chen</u>, even implicitly, the Court denies PAM's motion for reconsideration.

---

"normal value, and normal value is calculated as the weighted-average net price of sales above cost for sales of the same CONNUM (computer control number) in the same month. This is called the 'average-to-transaction method,'" (Motion of Pl. PAM S.p.A. for Reconsideration of Slip Op. 08-75 ("Recons. Mot.") 10-11), whereas the Court described the "transaction-to-transaction" method. <u>See</u> 19 C.F.R. § 351.414(b)(2)-(3) (2008). The Court thanks PAM for the clarification, but stresses that the misstatement is not fatal to the Court's holding in the prior opinion, Slip Op. 08-75.

DISCUSSION

USCIT Rule 59 allows a court to reconsider its judgment in a case when it is based on a manifest error of law or fact. A motion for reconsideration is the appropriate vehicle to address a significant change in controlling authority that was issued during the pendency of the case at bar. Doe v. New York City Dep't of Social Services, 709 F.2d 782, 789 (2d Cir. 1983) (quoted by Hyundia Electronics Indus. v. United States, 30 CIT __, __, 414 F. Supp. 2d 1289, 1291 (2006) ("The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.").

PAM argues that Exxon Shipping presents such a change. In that case, the jury awarded $287 million in compensatory damages and $5 billion in punitive damages. The Court of Appeals for the Ninth Circuit reduced the punitive award to $2.5 billion. In re Exxon Valdez, 490 F.3d 1066, 1095 (9th Cir. 2007). The Supreme Court held that even the reduced punitive award against Exxon was excessive as a matter of maritime common law and should be limited to an amount no more than equal to compensatory damages. Exxon Shipping at 2633. The Court reasoned that punitive damages posed a problem because of the "stark unpredictability" of the size of the award in any case. Id. "Courts of law are concerned with fairness as consistency," and the available data on punitive awards suggests that, while the ratio of punitive-to-compensatory awards in

the mean and median cases hovered around 1:1, "the outlier cases subject defendants to punitive damages that dwarf corresponding compensatories." Id. The solution proposed by the Court was to "peg[] punitive to compensatory damages using a ratio or maximum multiple," which the Court set at 1:1 in this case. Id. at 33.

PAM argues that the reasoning of the case is applicable beyond the field of punitive damages. PAM states that the "fundamental proposition of Exxon Shipping . . . is that a system of judicial dispute resolution should have a strong and consistent abhorrence for statistical outliers." (Recons. Mot. 8.) Insofar as Ta Chen allows Commerce to corroborate an adverse facts available dumping margin with statistical outliers, PAM argues that the authority of the case "has been severely brought into question." (Id. at 9.)

The Court disagrees that the validity of Ta Chen has been undermined by Exxon Shipping. The two cases deal with different subject matter: punitive damages in Exxon Shipping, and the corroboration of adverse facts available dumping margins in Ta Chen. Those two subject matters are largely not analogous. In a punitive award case like Exxon Shipping, the decision maker has all the information needed to render a verdict, and the question for the reviewing court is whether the resulting punitive award is excessive. The issue of "outliers" pertains to results: is the punitive award anomalous as compared to other punitive awards in similar circumstances?

In contrast, adverse facts available cases operate in a world of less-then-perfect information.  See Mittal Steel Galati S.A. v. United States, 31 CIT __, __, 491 F. Supp. 2d 1273, 1276 (2007) ("In a total adverse facts available scenario, Commerce may not be able to calculate an antidumping rate for the uncooperative respondent because the information required for such a calculation (the respondent's sales and cost information for the subject merchandise for the period of review) typically is not available or has not been provided.").  Because the respondent's true level of dumping may not be known, Commerce calculates a proxy antidumping duty rate based on the facts available on the record, sometimes using adverse inferences.  Commerce then corroborates the dumping margin to ensure that it is a "reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to non-compliance." F.LLI De Cecco, 216 F.3d at 1032.

PAM claims that when Commerce corroborates the dumping margin using only a small number of transaction-specific dumping margins, a methodology affirmed by Ta Chen, the ghost of Exxon Shipping rides again.  However, Exxon Shipping dealt with outlier results; the issue here is one of the sufficiency of data (i.e., how robust does Commerce's corroboration have to be in order to ensure that an adverse facts available dumping margin is a "reasonably accurate estimate of the respondent's actual rate, albeit with some built-in increase intended as a deterrent to noncompliance"?  See 216

F.3d at 1032.).  Because the two situations are not analogous, <u>Exxon Shipping</u> does not

undermine or overrule the validity of <u>Ta Chen</u>.


### CONCLUSION

The Court does not accept PAM's argument that the validity of <u>Ta Chen</u> has been

undermined by the Supreme Court's decision in <u>Exxon Shipping</u>.  As a result, PAM

failed to establish that the Court's reliance on <u>Ta Chen</u> in Slip Op. 08-75 constitutes

manifest error.  Therefore, PAM's motion for reconsideration is DENIED.


                                                    /s/ Gregory W. Carman
                                                    Gregory W. Carman

Dated: September 9, 2008
         New York, New York